UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| SHADEE RAHEEM BELL | CIVIL ACTION NO. 23-235 |
| VERSUS | JUDGE EDWARDS |
| CACTUS WELLHEAD LLC | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Before the Court is a Motion for Summary Judgment (R. Doc. 39) filed by the defendant, Cactus Wellhead LLC ("Cactus").  Pursuant to Local Rule 7.5, a response was due by April 5, 2024.  *See* R. Doc. 40.  As of the date of this Ruling, no opposition has been filed.  In addition, the plaintiff, Shadee Raheem Bell ("Mr. Bell"), has not moved for an extension of the deadline to file an opposition brief.  Hence, the Motion is unopposed.

After careful consideration of the Motion, the record, and the applicable law, the Motion is **GRANTED,** and Shadee Bell's claims against Cactus Wellhead LLC are **DISMISSED WITH PREJUDICE.**

### I. BACKGROUND

This is an employment discrimination case in which the plaintiff, Mr. Bell, alleges disparate treatment, retaliation, interference, and wrongful termination by his former employer, the defendant, Cactus. R. Doc. 1 at 4–7.  As required, Mr. Bell first filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").  *Id.* at 12.  The EEOC did not pursue the charge, and issued Mr. Bell a right-to-sue letter on November 29, 2022.  *Id.*  Mr. Bell subsequently filed suit in this Court on February 22, 2022.  *Id.* at 1.

In his Amended Complaint, Mr. Bell alleges that Cactus violated his rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000(e), *et seq.* ("Title VII"), and the Family Medical Leave Act of 1993, 29 U.S.C. 2601, *et seq* ("FMLA").  R. Doc. 26 at 1. These alleged violations arise from Mr. Bell's termination while on FMLA leave on April 1, 2020.  *Id.* at 11.  While scant of any basis for a Title VII claim, he cites a recorded phone call for the proposition that Cactus "willfully [violated]" the FMLA by terminating Mr. Bell's employment despite "knowing he was on FMLA." *Id.* at 2 (citing R. Doc. 24).  Accordingly, Mr. Bell seeks recourse for damages allegedly "caused by the retaliatory conduct [of Cactus]."  *Id.* at 13.

Cactus filed the instant Motion for Summary Judgment, asserting that Mr. Bell has no evidence of discrimination nor retaliation that could support a claim under Title VII.  R. Doc. 39-1 at 10–17.  Further, Cactus contends that Mr. Bell's taking of FMLA leave "played no role in Cactus Wellhead's decision to eliminate Bell's position."  *Id.* at 20.  Instead, his role was eliminated "along with … forty other[s]" "in order to survive the sudden economic peril that Cactus Wellhead found itself [in] as a result of the COVID-19 shutdowns."  *Id.*

Mr. Bell did not file a response.

## II. LEGAL STANDARD

Summary judgment is appropriate when the evidence shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Hyatt v. Thomas,* 843 F.3d 172, 177 (5th Cir. 2016) (quoting

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A dispute is genuine if the summary judgment evidence is such that a reasonable jury could return a verdict for the [non-movant]." *Id.* (internal quotations omitted). In evaluating a motion for summary judgment, the court "may not make credibility determinations or weigh the evidence" and "must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party." *Total E&P USA Inc. v. Kerr-McGee Oil & Gas Corp.*, 719 F.3d 424, 434 (5th Cir. 2013) (internal citations omitted).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting *Anderson,* 477 U.S. at 247). "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." *Stahl v. Novartis Pharm. Corp.,* 283 F.3d 254, 263 (5th Cir. 2002). Thereafter, if the non-movant is unable to identify anything in the record to support its claim, summary judgment is appropriate. *Id.* District courts may not grant a motion for summary judgment simply because the motion is not opposed but may grant the motion "if the undisputed facts show the movant is entitled to judgment as a matter of law." *Day v. Wells Fargo Bank Nat. Ass'n,* 768 F.3d 435, 435 (5th Cir. 2014) (per curiam); *see also Thompson v. Eason,* 258 F. Supp. 2d 508, 515 (N.D. Tex. 2003) (where no opposition is filed, the nonmovant's unsworn pleadings are not competent summary judgment evidence and

movant's evidence may be accepted as undisputed); *UNUM Life Ins. Co. of America v. Long*, 227 F. Supp. 2d 609, 614 (N.D. Tex. 2002) ("Although the court may not enter a 'default' summary judgment, it may accept evidence submitted by [movant] as undisputed."); *Bookman v. Shubzda*, 945 F. Supp. 999, 1002 (N.D. Tex.) ("A summary judgment nonmovant who does not respond to the motion is relegated to his unsworn pleadings, which do not constitute summary judgment evidence.").

### III.  ANALYSIS

### A.  Disparate Treatment or Wrongful Termination under Title VII

Title VII prohibits an employer from "discharg[ing] an individual, or otherwise discriminat[ing] against any individual ... because of such individual's race, ... or national origin."  42 U.S.C. § 2000e–2(a)(1).

In order for his Title VII discrimination claims to survive summary judgment, Mr. Bell must raise a "genuine issue as to a[ ] material fact" that Cactus discriminated against him.  Fed. R. Civ. P. 56(c).  To do so, Mr. Bell must satisfy the burden shifting test annunciated by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973), "whereby a plaintiff must first establish a prima facie case of discrimination. After doing so, the burden of production shifts to the defendant to produce evidence that the plaintiff was rejected for a legitimate, nondiscriminatory reason." *Okoye v. Univ. of Texas Houston Health Sci. Ctr.*, 245 F.3d 507, 512 (5th Cir. 2001) (cleaned up).  And "[i]f the defendant is able to produce a legitimate reason, then the presumption of discrimination vanishes." *Id.*

Mr. Bell can establish a prima facie case by providing evidence that he: "(1) is a member of a protected class; (2) was qualified for h[is] position; (3) was subject to

an adverse employment action; and (4) was replaced by someone outside the protected class, or, in the case of disparate treatment, shows that others similarly situated were treated more favorably." *Id.* at 512-13 (cleaned up). Mr. Bell has failed to provide any evidence in support of his being replaced, or his former pay scale being less than,[1] someone outside of his protected class. And if that weren't enough, his wrongful termination claim certainly fails once the burden shifts to Cactus, who has shown that no genuine dispute of material fact exists regarding their legitimate, nondiscriminatory reason for his termination—the COVID-19 shutdown. *Id.* at 512; *see* R. Doc. 39-4.

### B. Interference and Retaliation under the FMLA

"The FMLA contains two distinct provisions." *Mauder v. Metro. Transit Auth. of Harris Cnty., Tex.*, 446 F.3d 574, 580 (5th Cir. 2006) (internal citations omitted). "The first provision of the FMLA creates a series of entitlements or substantive rights." *Id.* Relevant to Mr. Bell, "[a]n employee's right to return to the same position after a qualified absence falls under this category." *Id.* (citation omitted). The second provision of the FMLA protects employees from retaliation for exercising their rights under the FMLA. *Id.* (citation omitted). Mr. Bell asserts claims under both provisions, yet both fail for the same reason as his Title VII claims.

"If an employee is laid off during the course of taking FMLA leave and employment is terminated, the employer's responsibility to … restore the employee

---

[1] In passing, Mr. Bell appears to make a claim under Title VII for Cactus' alleged failure to promote him and give him pay raises. *See* R. Doc. 26 at 7–10. However, no evidence in the record supports this potential claim, whether or not it is sufficiently pleaded.

[to their previous position] cease[s] at the time the employee is laid off....”  29 C.F.R.

§ 825.216.  Similarly, “although denying an employee the reinstatement to which he

is entitled generally violates the FMLA, denying reinstatement to an employee whose

right to restored employment had already been extinguished—for legitimate reasons

unrelated to his efforts to secure FMLA leave—does not violate the Act.”  *Shirley v.*

*Precision Castparts Corp.*, 726 F.3d 675, 682 (5th Cir. 2013).[2]  “If the employer

presents a legitimate reason for the termination, the employee must present evidence

that the employer's reason was pretextual.”  *Walker v. Energy Transfer Partners,*

*LLC*, No. 5:18-CV-0630, 2020 WL 730899, at *5 (W.D. La. Feb. 11, 2020) (citing

*Shirley*, 726 F.3d at 682–83).  Since the COVID-19 shutdown—and its effect on the

energy industry—was a legitimate reason for termination, and since Mr. Bell has

failed to create a genuine issue of material fact as to that offered reason being

pretextual, his claims under the FMLA fail.  *See* R. Doc. 39-4.

## IV. CONCLUSION

Mr. Bell has failed to create a genuine dispute of material fact, or offer any

competent evidence in support of, elements essential to his claims under both Title

VII and the FMLA.  A legitimate reason for termination, unrebutted by the plaintiff,

negates Mr. Bell's claims under either Title VII or the FMLA.  *See Outley v. Luke &*

*Assocs., Inc.*, 840 F.3d 212, 216 (5th Cir. 2016) (Title VII wrongful termination);

*Septimus v. Univ. of Houston*, 399 F.3d 601, 607 (5th Cir. 2005) (Title VII retaliation);

---

[2] This reality, of course, contradicts Mr. Bell's assertion—or misapprehension—made in previous filings that his being laid off while on FMLA leave was absolutely prohibited under the statute. *See e.g.,* R. Doc. 26 at 2; R. Doc. 20 at 5–6.  Accordingly, Mr. Bell's recording of a phone call with his supervisor (in the record at R. Doc. 24) does not give rise to a claim under the FMLA—because taking FMLA leave does not make one *per se* immune from layoff.

*Hester v. Bell-Textron, Inc.,* 11 F.4th 301, 306 (5th Cir. 2021) (FMLA interference);

*Richardson v. Monitronics Int'l, Inc.,* 434 F.3d 327, 332 (5th Cir. 2005) (FMLA

retaliation).  It appears from the record that Mr. Bell was laid off due to market forces

stemming from the COVID-19 pandemic and subsequent shutdown of the economy—

not because of his race, and not because he took FMLA leave.  *See* R. Docs. 39-4 and

39-7.  Without offering evidence to show an unlawful animus for his termination, and

finding none in the record, his case must be dismissed.  *See Forsyth v. Barr,* 19 F.3d

1527, 1533 (5th Cir. 1994) (holding that the district court has no obligation to "sift

through the record in search of evidence to support [the nonmovant's] opposition to

summary judgment.") (citation omitted).

Accordingly, Cactus's Motion for Summary Judgment (R. Doc. 39) is

**GRANTED.**  A judgment consistent with this ruling shall follow.

**THUS DONE AND SIGNED** this 12th day of September, 2024.

_____
**JERRY EDWARDS, JR.**
**UNITED STATES DISTRICT JUDGE**